Junior HEYBOER, Plaintiff and Counter-Defendant,

v.

Elmer KOLBERG and J. Paul Herman, Defendants and Cross-Defendants.

PEOPLES BANK AND TRUST COMPANY, Defendant, Counter-Plaintiff and Cross-Plaintiff,

v.

The UNITED STATES of America, Defendant and Cross-Defendant.

No. G78–597 CA6.

United States District Court, W. D. Michigan, S. D.

July 16, 1980.

Joel G. Bouwens, Dalman, Murphy & Bidol, Holland, Mich., for Junior Heyboer.

Harry J. Knudsen, White, Spaniola, Knudsen, Stariha & Potuznik, Muskegon, Mich., for J. Paul Herman.

Gregory J. Rappleye, Scholten & Fant, Grand Haven, Mich., for Peoples Bank.

James S. Brady, U. S. Atty., Grand Rapids, Mich., for the U. S.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter was tried without a jury on June 23 and 24, 1980. This decision shall constitute the Court's findings of fact and conclusions of law as required by Fed.R. Civ.P. 52(a).

The controversy centers on an auction sale of the personalty relating to a farm operated by Elmer Kolberg, and, more specifically, the rights of the parties relating to one 1973 International 4166D 4-wheel drive tractor. There were four parties involved in the proceedings—the Farmers Home Administration (secured creditor), the Peoples Bank and Trust Company (secured creditor), J. Paul Herman (auctioneer), and Junior Heyboer (purchaser of the tractor at the auction)—as the claims against Elmer Kolberg were extinguished by his bankruptcy. The parties agree that the bank's lien was subordinate to the FmHA's.

The farmer, Mr. Kolberg, was in default on his loans from FmHA as of January 1977, due to his failure to make a required payment. Several meetings were held between Mr. Kolberg and the FmHA, both before and after the default, concerning Mr. Kolberg's efforts to obtain further loans in an attempt to remain in operation. The FmHA was unwilling to extend further credit to Mr. Kolberg and he was unable to obtain credit elsewhere. The possibility of Mr. Kolberg liquidating his farm operation was discussed, and it became clear to him that other than foreclosure by the FmHA he had no realistic choice. This course of action was urged upon him by the FmHA in accordance with 7 C.F.R. § 1930.41(a), which reads in part, "Because it is to the best interest of the borrower and FmHA, when liquidation has been approved, FmHA usually will encourage the borrower to sell security or EO property at public auction in his or her own name." [1]

Mr. Kolberg eventually agreed that a sale would be undertaken in his name, and, pursuant to FmHA regulations, an "Agreement for Public Sale by Borrower" was executed. The auction sale was conducted pursuant to this written agreement between the farmer, the auctioneer, and the Farmers Home Administration. The agreement consists of a completed FmHA form, which the FmHA requires to be used. The farmer must have the FmHA's permission to sell any collateral subject to its security interest. No permission will be given unless this FmHA form agreement is executed. The agreement dictates the terms and conditions of the sale including that the FmHA is the assignee of the proceeds, that the FmHA is to be provided with an accounting, and that distribution of the proceeds is governed by the terms of the agreement. FmHA personnel completed the typewritten portions of the agreement. For all practical purposes the FmHA controlled every aspect of the sale, and Mr. Kolberg was conducting the sale in name only.

The case is governed by the Uniform Commercial Code as it was codified in Michigan at that time. Section 9–504, M.C.L.A. § 440.9504 governs a secured party's right to dispose of collateral after default. This Court finds that the sale in controversy was a sale by a secured party (FmHA) after default within the meaning of § 440.9504.

1. 7 C.F.R. § 1930.40 contains the following language: "Liquidation will be undertaken when no further assistance will be given to a borrower and the borrower is in default."

As a consequence, the sale was governed in part by the provisions of § 440.9504(3) and (4):

(3) **Disposition of collateral at public or private proceedings.** Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

(4) **Rights acquired by purchaser.** When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings

(a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(b) in any other case, if the purchaser acts in good faith.

M.C.L.A. § 440.9504 (prior to 1978 amendment).

Pursuant to § 440.9504(3) FmHA had an obligation to send "reasonable notification of the time and place of [the] sale" to any "person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral." The Peoples Bank and Trust Company had such a duly filed financing statement relating to the International tractor, and the FmHA was made aware of the security interest by a lien search conducted pursuant to the sale agreement. No notice was sent to the Peoples Bank by the FmHA or by anyone else, and Peoples Bank remained unaware of the sale until about 8 months after it took place. As a result of this failure by the FmHA, the bank's lien was not satisfied. The proceeds of the sale were more than sufficient to satisfy the bank's lien.

Section 400.9504(4) makes it clear that the bank has no remedy against Mr. Heyboer, who purchased the tractor at the auction sale, because Mr. Heyboer was a purchaser for value, had no knowledge of any defects in the sale, and did not buy "in collusion with the secured party, other bidders or the person conducting the sale." Under these conditions, each satisfied in this case, Mr. Heyboer took the tractor free of all liens.

■ The bank's remedy is against the FmHA pursuant to § 9–507(1), M.C.L.A. § 400.9507(1), which reads as follows:

Sec. 9507. (1) Disposition of collateral; secured party's noncompliance; remedies. If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. *If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the*

*secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.* If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price. [emphasis added]

The Court, therefore, finds the FmHA liable to the Peoples Bank and Trust Company in the amount of Five Thousand Five Hundred Dollars ($5,500.00) plus interest and costs.

The bank has counter-claimed and the FmHA has cross-claimed against the auctioneer, J. Paul Herman. The substance of their arguments is that the auctioneer had a duty to search and satisfy all liens, that pursuant to the sale agreement Mr. Herman should have paid the bank as a secured party before paying Mr. Kolberg, and that the bank was a third-party beneficiary of the agreement between Mr. Kolberg, Mr. Herman, and the FmHA.

The sale agreement does not create an obligation on the auctioneer's part to conduct a lien search. Where, as here, the FmHA conducts a lien search the agreement merely provides that the sale proceeds shall be dispersed first to repay the Government for the expense of the search, along with the other expenses of conducting the sale. This was done.

Mr. Herman distributed the proceeds in accordance with the priorities as set out in the agreement. The agreement purports to include a complete list of all liens and encumbrances, warranted by Mr. Kolberg, the borrower. Mr. Herman paid every lienholder listed in the agreement, and any other creditors that he became aware of after checking with Mr. Kolberg, his principal, to verify the debt. Had the FmHA properly *sent notice to the bank,* the bank could have come forward and its lien would have been paid.

Turning to the argument that the bank is a third-party beneficiary of the sales agreement, the law is clear that there must be an intent by the parties to the agreement to benefit the third-party. M.C. L.A. § 600.1405; Restatement (Second) of Contracts §§ 133 *et seq.* (1973); Restatement of Contracts §§ 133 *et seq.* (1932); Murray on Contracts § 27 (2d rev. ed. 1974). The bank argues that paragraph 10 of the agreement indicates that intent. In pertinent part that paragraph reads as follows:

10. Sale proceeds shall be dispersed as follows:

.    .   .  .      .       .

*Third.* Secured claims in the order of their priority.

This Court concludes that this language was intended by the parties to refer to the secured creditors listed in paragraph 3 of the agreement, and that the parties had no intent to benefit other secured creditors.

In summary the Court holds that the FmHA is liable to the Peoples Bank and Trust Company in the amount of Five Thousand Five Hundred Dollars ($5,500.00) plus interest and costs, that Mr. Heyboer took the tractor free and clear of the bank's lien, and that there is no liability on the part of Mr. Herman.

IT IS SO ORDERED.